# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

ESTATE OF CHARLES A. BROWN, )
deceased, JON BROWN, individually, )
and KIM GREEN, individually )
                                          )
                **Plaintiffs,**        )
                                          )
v.                                       )         CIV-15-280-R
                                          )
LINEAR, L.L.C. and )
CRITICAL SIGNAL )
TECHNOLOGIES, INC., )
                                          )
                **Defendants.**   )

## **ORDER**

This matter comes before the Court on Defendant Linear's Motion for Reconsideration, asking this Court to reassess the motion for summary judgment it filed in the District Court of Grady County, which was denied by that court. (Doc. Nos. 22). Plaintiff objects to Defendants' request. The Court ordered Plaintiff to file new, individual, responses to Defendants' motions for summary judgment. Having considered the parties' submissions both to this Court and to the District Court of Grady County, the Court finds as follows.

The Court must first consider its authority to reconsider the motions denied by the District Court of Grady County. 28 U.S.C. § 1450 provides as follows with regard to cases removed from state court:

> All injunctions, orders, and other proceedings had in such action prior to removal shall remain in full force and effect until dissolved or modified by the district court.

28 U.S.C. § 1450. Therefore, consistent with its authority to reconsider its own interlocutory

orders, the Court may also reconsider the orders entered by the District Court of Grady County.[1] The Court further finds that reconsideration in this case is appropriate, especially in the absence of any written decision or stated rationale by the District Court of Grady County.

This case arises from the death of Charles Brown on January 17, 2013, who was discovered by his family on January 13, 2013, having suffered a stroke at some point. Mr. Brown, who lived alone, was found by members of his family lying on his bed, unable to speak, gasping for breath, and motioning with his left arm, at approximately 7:30 p.m. that night. His son-in-law dialed 911 to summon an ambulance. Mr. Brown did not recover from the stroke and his family, following a DNR order, terminated life support. Plaintiffs contend the Personal Emergency Report System (PERS) manufactured by Defendant Linear and leased and monitored by Defendant CST was defective.[2] Plaintiffs contend that one or both Defendants is responsible for the death of Mr. Brown, father of Plaintiffs Jon Brown and Kim Green, because after calling 911 Ms. Green and her husband attempted to activate the unit,

---

[1] As noted by the Supreme Court in *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 434 (1974), § 1450 serves two basic purposes, judicial economy by granting state court orders full effect after removal and preventing the lapse of state courts orders upon removal. The statute, however, clearly contemplates modification of state court orders following removal. *Id.* Following removal federal law applies, and therefore, Defendants' contention that Plaintiff's brief in the District Court of Grady County did not comport with Oklahoma procedural law does not provide a basis for this Court to reject the state court decision.

[2] The system includes a base unit that connects to the customer's telephone land line and a pendant that allows remote activation of the base unit within certain distance parameters. The signals are monitored by CST at a central station, and when activated, the unit should communicate with the monitoring station indicating that the unit has been activated. The unit allows the monitoring center to communicate with the base unit in the customer's home in the event of activation, which allows the monitoring center to summon assistance if necessary.

2

and the unit failed to connect to CST's monitoring station. Plaintiffs contend that if the unit had operated correctly between January 11, 2013 and January 13, 2013[3], that Mr. Brown would have been able to summon help and earlier medical intervention would have saved his life.[4] Plaintiffs' claims against Defendant Linear are premised on theories of manufacturer's products liability and negligence. The claims against CST are based on its leasing of the allegedly defective equipment to Plaintiff and the monitoring of the system. Plaintiffs also pled claims of negligence against Defendant CST for its alleged failure to notify Mr. Brown regarding prior issues with his unit and in training the installer, Anne Grenier.[5]

In the motion for summary judgment filed in the District Court of Grady County, Defendant Linear, L.L.C., contended it was entitled to summary judgment because there was no evidence that Mr. Brown attempted to activate his pendant at the onset of his stroke. Defendant further argued that Plaintiffs failed to present evidence that the unit and transmitter it manufactured were defective with regard to either manufacture or design.[6] Defendant Linear argues that Plaintiffs failed to present admissible evidence to support a

---

[3] CST's records for January 11, 2013 show a "periodic test report" of January 11, 2013 at 19:34:39, which indicates that the CST system made contact with the base unit via the telephone. There was no interaction between anyone at Mr. Brown's residence and CST. The next entry is on January 20, 2013, after Mr. Brown's death, when the main console button was pushed by a member of his family, which resulted in a call between CST and the residence.

[4] Plaintiffs do not contend that Defendants were the cause of the stroke.

[5] Plaintiff's Petition included claims for breach of warranty, but Plaintiffs have apparently abandoned any warranty claim .

[6] Defendant Linear also moved for summary judgment on the claims of Jon Brown and Kim Green, individually, by separate motion, which the state court apparently did not address prior to removal of this action. CST included these arguments within its motion.

3

failure to warn claim and that Plaintiffs were required to present medical evidence to support their contention that the malfunction of the unit caused injury to Mr. Brown, specifically that he would have survived the stroke had the unit functioned properly.

Defendant CST argued it was entitled to summary judgment because the product was not defective, it was not negligent and did not negligently train the installer, and because Mr. Brown's death was caused by massive ischemic stroke, not failure of the Personal Emergency Response System he leased from CST.

The District Court of Grady County granted the motion for summary judgment filed by the non-diverse party, Anne Grenier, and denied, without order, the motions filed by Defendants CST and Linear. As noted, both request this Court reconsider the state court's ruling, which is within this Court's discretion. The Court chooses to exercise this discretion, and finds that Defendant Linear is entitled to summary judgment based on the record.

The elements required to establish a right to recovery under products liability theory were set forth by this Court in *Kirkland v. General Motors Corporation*:

> First of all Plaintiff must prove that the product was the cause of the injury; the mere possibility that it might have caused the injury is not enough.
> Secondly, Plaintiff must provide that the defect existed in the product, if the action is against the manufacturer, at the time of the product left the manufacturer's possession and control. *Thompson v. Trane Co.*, 500 P.2d 1329 (1972). If the action is against the retailer or supplier of the article, then the Plaintiff must prove that the article was defective at the time of sale for public use or consumption or at the time it left the retailer's possession and control.
> Thirdly, Plaintiff must prove that the defect made the article unreasonably dangerous to him or to his property.

*Woods v. Fruehauf Trailer Corp.*, 765 P.2d 770, 773-74 (Okla. 1988)(quoting *Kirkland v. General Motors Corp.*, 521 P.2d 1353, 1363 (Okla. 1974)). A defect "can stem from either a dangerous design or an inadequate warning about the product's dangers." *Braswell v. Cincinnati Inc.*, 731 F.3d 1081, 1085 (10th Cir.2013) (applying Oklahoma law); *see also Tansy v. Dacomed Corp.*, 890 P.2d 881, 886 (Okla.1994) (observing that "inadequate warnings" can render a product defective).

The Court first concludes summary judgment is appropriate because there is no evidence that Mr. Brown used or attempted to use either the pendant or the console button following his stroke. On January 11, 2013, the PERS unit at Mr. Brown's home sent a successful test report to the CST monitoring station. The evidence establishes that the next known attempt to use the unit was on January 13, 2013, when Mr. Brown's daughter, Plaintiff Kim Green, and her husband, Duane Smith, went to check on Mr. Brown because the family had been unable to reach him. When they arrived, as noted above, they found him lying on the bed, naked, unable to move his right side, and struggling to breath. His son-in-law called 911 from his cell phone, identified the problem for the 911 operator, and provided Mr. Brown's address. While Mr. Smith was on the telephone with 911, Kim Green pushed the button on the PERS console unit. When the button was pushed the emergency siren sounded, repeating "emergency emergency." Ms. Green testified that the "sending signal" unit on the console was flashing, but no representative from CST ever communicated via the unit. Multiple other attempts were made to activate the unit that day, all were unsuccessful. There is no dispute that the pendant, designed to be worn around the neck, was not found when Mr.

Brown was discovered by his family.[7] Rather, it was found by his cleaning person after his death, under the bed where he was found by his family on January 13, 2013. "A manufacturer's products liability plaintiff need not exclude all other possible conclusions. However, the mere possibility that a defect caused the injury is not sufficient." *Dutsch v. Sea Ray Boats, Inc.*, 845 P.2d 187, 191 (Okla.1992). Here, there is nothing more than speculation that Mr. Brown attempted to push either the pendant or base buttons and that the attempt was unsuccessful, resulting in a delay in medical treatment. As a result, the Court concludes that Plaintiffs cannot establish any injury to Mr. Brown as the result of any alleged defect.[8]

The Court also finds that Plaintiffs have failed to establish that the PERS unit and/or the transmitter pendant were unreasonably dangerous. To qualify as "unreasonably dangerous," a product "must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." *Swift v. Serv. Chem., Inc.*, 310 P.3d 1127, 1131 (Okla.Civ.App.2013). The design defect identified by Plaintiff's expert is the

---

[7] Shelli Brown, Mr. Brown's daughter-in-law, testified in deposition:
Q: When you were there, did Mr. Brown have a habit or a routine that he -- about the pendant, in terms of if he wore it or when he wasn't wearing it, did he have a place that he put it? What do you remember?
A: I know when he wasn't wearing it, there was a lamp next to his bed, and he hung it from the top of that lamp where it stayed.
Brown Depo, p. 18. The pendant was designed to be worn 24 hours a day, seven days a week, which apparently Mr. Brown did not do.

[8] The model of pendant transmitter at issue herein had been the subject of an earlier recall as a result of battery malfunction. Any argument that the pendant was defective because of the battery issue noted in the recall is without merit, because the undisputed testimony on behalf of Linear was that the recall was based on a "hard failure," that is one that would have permanently disabled the transmitter pendant. The pendant recovered from under Mr. Brown's bed worked when tested after January 13, 2013, and therefore, the battery recall issue could not have been the cause for the system's failure to work on that date.

failure to include cellular backup, such that if the telephone line malfunctions, the unit will nevertheless remain operable.[9] Clearly Mr. Brown was the "ordinary consumer" of the pendent and the PERS unit, because he "would be foreseeably expected to purchase the product involved." *Woods*, 765 P.2d at 774. There has been no evidence presented that the ordinary person who purchases a PERS unit designed to operate through a traditional, as opposed to cellular, telephone line, would anticipate that if the landline failed to function the unit would nevertheless remain able to connect to the monitoring station.

The Court finds that although there is evidence that the system did not connect with CST as expected on January 13, 2013, that Plaintiffs have failed to present evidence of a defect in the unit. Plaintiffs' expert testified:

> I feel that the unit was somewhat defective. And we're talking about the product, which includes the unit, the telephone network, the central station, the people that worked the central station to monitor, alert and respond. I found that the unit was defective because this technology [cellular backup] was available and yet it was not being utilized.
> There was a complete outright failure on January 13, 2013 witnessed by Charles Brown's family. I believe they tried this unit a total of ten times, and it never sent the signal to the central station.
> According to the Linear deposition, the signal was sent out. According to CST, no signal was received. I believe if that is the case, this C3 unit, had it been

---

[9] In response to Linear's motion for summary judgment on the issue of liability, Plaintiffs present a series of alleged shortcomings with regard to the PERS unit and the pendant, in bullet-point form, not organized in any obvious response to Linear's arguments in the same order presented by Defendant's motion. The Court also notes that Plaintiffs cite to portions of the record that they have not included or that do not support the particular argument being made. Furthermore, to the extent Plaintiffs cite to a multi-page exhibit without page citation, the Court will not pick through the voluminous exhibits to find evidentiary support for their claims. Additionally, and contrary to the Court's prior instructions, Plaintiffs refer repeatedly to "Defendants" in response to Linear's motion, although Linear is the manufacturer and CST installed/leased and provided monitoring services. Regardless, the Court has attempted to construe Plaintiffs arguments as best possible, which generally return to the same point, that Defendant Linear should have provided cellular backup and that the unit should have alerted users to a disabled land line.

incorporated into their product, this could have saved Charles Brown's life. CST did not have a monitoring system intact for the phone line.

Milks, p. 66-67.

Plaintiffs also appear to press a failure to warn claim, because Linear did not inform the end user that a faulty telephone line will prevent the unit from operating properly. Plaintiffs have failed to establish that the PERS unit or pendant was dangerous beyond the scope expected by the ordinary user. Mr. Brown was the intended user of a PERS unit and pendant. The paperwork he executed upon installation indicated

> Telephone Lines. Customer acknowledges signals cannot be transmitted to CST if the phone lines are cut, tampered with, disconnected or not working for any reason.

Ex. 15 to Milks' Expert Report, Plaintiff's Ex. 2. There is no evidence submitted from which the Court can infer that an ordinary consumer in January 2010, when the unit was manufactured would have anticipated that the PERS unit attached to a traditional telephone line would have included a cellular backup, especially in the absence of any cellular provider. When Plaintiff's expert purchased a C3 cellular device as part of his research for his opinion, it required that he simultaneously purchase a SIM card and obtain cellular service before he could attempt to tie it into the PERS system. The Court concludes that no reasonable consumer would anticipate that a unit designed to be plugged into a land line would offer cellular backup or that such unit would work in the event the telephone line became inoperative. The fact that cellular backup could have been incorporated into the unit is not dispositive; "merely because a product could be made 'safer does not mean it posed an

unreasonable danger to the ordinary consumer who used it." *Braswell v. Cincinnati, Inc.*, 731 F.3d 1081, 1087 (10th Cir. 2013)(citing Woods, 765 P.2d at 775); *Walters v. Materials Transp. Co.*, 1999 WL 374246, at *2 (10th Cir. June 4, 1999).[10]

> In *Duane v. Oklahoma Gas & Electric Company*, the Oklahoma Supreme Court explained,
>> [O]nly where the seller has reason to anticipate that danger may result from a particular use, may he be required to give adequate warning of the danger, and a product sold without such warning is in a defective condition.... A duty to warn must also be based upon the foreseeability that the user would use the product in that way, the type of danger involved, and foreseeability of the user's knowledge of the danger.
>
> 833 P.2d at 286 (citing Restatement of Torts (Second), § 402A, Comment h). Accordingly, a manufacturer may be liable for selling or manufacturing a defective product if an unclear or inadequate warning fails to inform a user of an inherent or latent defect. *Smith v. United States Gypsum Co.*, 612 P.2d 251, 253–54 (Okla.1980). However, if the manufacturer provides a warning that covers all foreseeable uses and the product would be safe if the directions were followed, a product is not defective under a failure to warn theory. *Id.* at 253. A manufacturer has no duty to warn users of an obvious danger or risk which an ordinary user would expect from any foreseeable use of a product. *Daniel v. Ben E. Keith Co.*, 97 F.3d 1329, 1334 (10th Cir.1996); *Duane*, 833 P.2d at 286.

*Tate v. Statco Eng'g & Fabricators, Inc.*, 2013 WL 6185476, at *5 (Nov. 25, 2013). The Court finds for the same reasons as set forth above with regard to Plaintiffs' defective design claim, that they cannot prevail on their failure to warn claim. Linear had no obligation to warn of the obvious risk that a monitor operating through a telephone line, would not function if for any reason the line is inoperable. Furthermore, as set forth above, Plaintiffs

---

[10] Mr. Milks' theory is based in part on his internet research which revealed that in 2009 a company, HAI, included in its 2010 Product Catalog a "Cellular Communications Center (C3)." The C3 was described as "afford[ing] land line convenience and call quality to non-land line homes . . . [w]ith the C3, homeowners gain added security when the unexpected occurs and land line service is compromised."

9

have failed to establish that the absence of any warning caused injury to Mr. Brown, because there is no evidence that he attempted to activate the console or pendant transmitter following his stroke in January 2013.

Although Defendant Linear sought summary judgment on Plaintiffs' negligence claims, no such claims are addressed in Plaintiffs' brief, and accordingly, Defendant Linear is entitled to summary judgment on any such claim. To the extent Plaintiffs are attempting to recover from Linear based on a theory of fraud or deception or violation of the Oklahoma Consumer Protection Act, their claims fail. There is no dispute that Linear did not advertise its products to the general population, rather Linear provided products to monitoring companies, such as CST, over which it had no control. Finally, as a result of the Court's determination that Defendants are entitled to summary judgment on the merits of Plaintiffs' claims, the Court need not consider whether the individual Plaintiffs are proper parties to this action, because there will remain an absence of evidence that Mr. Brown attempted to activate the PERS console or the transmitter. Defendants' Motions for Reconsideration are hereby GRANTED and Defendant Linear is entitled to summary judgment.

IT IS SO ORDERED this 7th day of March, 2016.

*David L. Russell* (signature)

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE